IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action Nos. 1:18-cr-00192-NYW-5, 1:18-cr-00236-NYW-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JONATHAN LOVATO/JONATHAN JAMES LOVATO,[1]

    Defendant.

**ORDER OF DETENTION**

THESE MATTERS, both involving the same defendant, came before this court for a detention hearing on December 30, 2025, subsequent to the defendant's arrest on a Petition for Warrant on Person Under Supervision. ECF No. 962.[2] Both sides presented argument on the issue of detention.

Rule 32.1(a)(6) of the Federal Rules of Criminal Procedure governs the issue of detention where a person has been arrested for violating probation or supervised release. The Rule provides that the person must be taken without unnecessary delay before a magistrate judge who, among other things, must make a determination of detention as follows:

> The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. **The burden of establishing by clear and convincing**

---

[1] "Jonathan Lovato" and "Jonathan James Lovato" are the same person.
[2] For simplicity, this Order references docket entries in case number 1:18-cr-00192-NYW-02, unless otherwise indicated. Substantively identical filings are contained in case number 1:18-cr-00236-NYW. This Order applies equally to both cases and is docketed in both matters.

> **evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.**

Fed. R. Crim. P. 32.1(a)(6) (emphasis added).

18 U.S.C. § 3143(a) provides:

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds **by clear and convincing evidence** that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless–

- (A)(i)  the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
- (ii)    an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
- (B)     the judicial officer finds **by clear and convincing evidence** that the person is not likely to flee or pose a danger to any other person or the community.

(emphasis added).

"Although the court is not required to consider the factors set out in 18 U.S.C. § 3142(g) in this context, some courts have found those pretrial detention factors helpful to the analysis" under § 3143(a)(1). *See United States v. Wills*, No. 19-40013-03-DDC, 2020 WL 1873622, at *2

(D. Kan. Apr. 15, 2020) (citing *United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017)); *see also United States v. Riego*, No. 1:21-CR-596-WJ-1, 2022 WL 15437892, at *1 (D.N.M. Oct. 27, 2022) ("In evaluating whether a defendant has met his burden under 18 U.S.C. § 3143(a)(1), a court may consider the pretrial detention factors set out in 18 U.S.C. § 3142(g).") (citations omitted). Those factors "include the following: (1) the nature and circumstance of the offense charged, including whether it involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including past criminal history, record of appearing at court proceedings, and whether the defendant has a history of complying with conditions of release, among other things; and (4) whether the defendant's release would pose a danger to any person or the community." *Wills*, 2020 WL 1873622, at *2.

In making its findings of fact, the court has taken judicial notice of the information contained in the court files and considered the arguments presented at the detention hearing. Additionally, although not obligatory considerations, the court finds the factors set forth in § 3142(g) to be a useful framework and so references them, as appropriate. Having evaluated all appropriate information, the court respectfully concludes that the defendant has failed to establish by clear and convincing evidence that he is not likely to flee.

Beginning with the nature and circumstances of the offense charged, the record demonstrates that, on March 5, 2020, the defendant was sentenced to concurrent terms in both federal criminal cases of 72 months of imprisonment, followed by a five-year term of supervised

release, for violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), distribute and possess with the intent to distribute 50 grams or more but less than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, and 18 U.S.C. §2, aiding and abetting. ECF No. 800. On May 31, 2024, the defendant's first term of supervised release was revoked in both cases after he absconded from supervision. ECF No. 906 (December 6, 2023 Petition for Warrant on Person Under Supervision); ECF No. 945 at 1 (May 31, 2024 Judgment for Revocation). As a consequence of multiple violations of the terms of his supervised release, the defendant was sentenced to a prison term of sixteen months, followed by a four-year term of supervised release, to be served concurrently in both cases. ECF No. 945 at 2, 3.

The defendant's term of supervision following the revocation of his first term of supervised release commenced on June 17, 2025, and was set to expire on June 16, 2029. ECF No. 962 at 1. The evidence proffered at the detention hearing showed that the defendant's non-compliant conduct with the terms of supervision commenced nearly immediately. The United States Probation Officer who has supervised the defendant throughout his first and second terms of supervision presented information demonstrating that, between July and September 2025, the defendant had five dilute urinalyses, resulting in inconclusive testing results. A series of three positive urine tests for methamphetamine followed on September 21, 2025, October 9, 2025, and October 23, 2025. *See* ECF No. 962 at 1-2.

To address this methamphetamine use, which the defendant acknowledged, the Probation Officer directed the defendant to participate in an in-patient substance abuse treatment program at Colorado Addiction and Recovery Services ("CARS"). That treatment commenced on or

about October 29, 2025, but by November 17, 2025, the defendant informed the Probation Officer that he had learned all he needed to know—after years of suffering from addiction—and that there was nothing more for him to learn. The defendant did follow the Probation Officer's directive to go into the CARS partial hospitalization program ("PHP"), in which he was required to reside in a sober-living house and participate in treatment six hours a day, Monday through Friday. However, on November 30, 2025, approximately five days after starting that program, the defendant packed up his belongings and failed to return for curfew, at which point he absconded from supervision. Probation officials had no knowledge of the defendant's whereabouts until his arrest on December 22, 2025. ECF No. 966. The defendant was unsuccessfully discharged from the CARS PHP on December 1, 2025.

This undisputed information indicates that the weight of the evidence concerning the defendant's violating the terms of his second term of supervised release is strong. In considering the defendant's risk of flight, the court also takes into account the fact that this very recent absconsion from court-ordered treatment mirrors in significant respects the conduct that culminated in the revocation of the defendant's first term of supervised release. In that instance, the defendant absconded from supervision sometime between October 1, 2023, and November 3, 2023. ECF No. 906 at 3. His whereabouts were unknown until his arrest on February 21, 2024. ECF No. 919. Within a few weeks, on March 8, 2024, the defendant was released on conditions pending his final revocation hearing, one of which was that he participate in the Harbor Lights rehabilitation program. ECF No. 933 at 3. He did not comply with that program even one day.

On March 9, 2024, the defendant claimed not to feel well, prompting Harbor Lights

officials to send him to the emergency room at Denver Health with a "buddy." ECF No. 934 at 1. The defendant disappeared from the hospital and was not seen again until he was arrested on May 16, 2024. ECF No. 937. As previously noted, the defendant's first term of supervised release was revoked on May 31, 2024. ECF No. 945.

This undisputed information reflecting the defendant's non-compliance with the terms of supervised release evinces the history and characteristics of a person who possesses a strong propensity to flee and, equally critically, exhibits no regard for court orders. Acknowledging this record, the defendant presented a release proposal that would require his participation in a thirty-day in-patient treatment program through an entity called Paramount Rehabilitation Center, to be followed by enrollment in an as-yet-to-be-identified sober living program or, alternatively, release to an individual named Crystal Spurk.[3] Ms. Spurk was represented to be a "behavioral health technician," as well as the defendant's significant other. With all due respect the Paramount program and to Ms. Spurk, these alternatives to detention do not demonstrate the existence of clear and convincing evidence that the defendant would not flee.

First and foremost, the defendant has repeatedly failed to comply with multiple opportunities to participate in treatment, with the encouragement of a Probation Officer who has consistently worked with the defendant to attempt to achieve some degree of success. Unfortunately, her efforts have been unsuccessful. And the court was presented with no information sufficient to clearly and convincingly show that the defendant would not similarly abscond from the very same type of program now. At the hearing, the defendant asserted that he

---

[3] These are phonetic spellings of Ms. Spurk's first and last names.

was unwilling to stay in the CARS program because he could not participate in that program and work full-time. That point, however, only serves to emphasize the defendant's failure to meet his burden here: it is not up to the defendant to decide what conditions are most appropriate or whether they "work[] for him," as the point was made at the detention hearing. Rather, it is the defendant's obligation to obey the orders issued by this court, including to participate in a treatment program selected by his Probation Officer, even if the defendant deems that program less than ideal. The record incontrovertibly shows the defendant has repeatedly failed to abide by these orders.

The prospect of yet another treatment program—one that would be conducted in an environment from which he could easily walk away—does not provide clear and convincing evidence that the defendant would not abscond a third time. Put otherwise, there is no evidence in the record clearly and convincingly showing that the defendant's established record of refusing to obey court orders would not continue if he were to be released to obtain treatment at the Paramount Rehabilitation Center. The clear and convincing standard of proof is "satisfied by evidence that would place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (cleaned up) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). In light of the defendant's extensive history of noncompliance with the terms of his release conditions—slipping the bonds of supervision and resulting in the court's losing contact with him for months at a time—the undersigned cannot find that the defendant's participation in the Paramount program suffices to create "an abiding conviction" that it is "highly probable" the defendant

would not flee.

Although the defendant suggests that he now would be motivated to comply with conditions of release, his history of repeated noncompliance with conditions imposed by this court strongly suggests otherwise. The prospect of incarceration does not appear to deter the defendant, and his proposal to participate in yet another program to attempt to address his addiction fails to overcome a record overwhelmingly establishing that he presents a serious flight risk. In so finding, the court has also considered that both the government and the United States Probation Office voiced strong disagreement with the proposition that the defendant's participation in the Paramount program is sufficient to reasonably mitigate the defendant's risk of flight. Accordingly,

IT IS ORDERED that the defendant is committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and

IT IS FURTHER ORDERED that the defendant is to be afforded a reasonable opportunity to consult confidentially with defense counsel; and

IT IS FURTHER ORDERED that upon order of this Court or on request of an attorney for the United States, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with this proceeding.

DATED: January 1, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge